THE STATE OF OHIO, APPELLEE, *v.* JOHNSON, APPELLANT.

(No. 82AP-236—Decided February 24, 1983.)

Mr. *Michael Miller,* prosecuting attorney, and Ms. *Karen L. Martin,* for appellee.

Mr. *Jim Slagle,* for appellant.

WHITESIDE, P.J. Defendant-appellant, Luther David Johnson, appeals from his convictions of aggravated murder, aggravated burglary and aggravated robbery in the Franklin County Court of Common Pleas and raises seven assignments of error, as follows:

"1. The court erred in ruling that defendant-appellant's prior misdemeanor convictions for petty theft and attempted receiving stolen property would be admissible to attack his credibility.

"2. The court erred in permitting the state to present evidence of defendant-appellant's statement to the police as it amounted to an involuntary confession obtained in violation of his constitutional right to due process.

"3. The court erred in permitting the state to present evidence that the defendant-appellant had refused to take a polygraph, thereby violating his right against self-incrimination.

"4. The court erred in permitting the introduction of pictures of the deceased victim's body into evidence when the probative value of these pictures was substantially outweighed by the danger of unfair prejudice.

"5. The court erred in ruling that transcripts of prior inconsistent statements of the state's chief witness could not be admitted into evidence.

"6. The court erred in instructing the jury that the defendant could be found guilty as an aider or abettor if he associated himself with another for the purpose of committing a crime.

"7. The court erred in failing to instruct the jury as to all of the material elements of aggravated robbery as required by O.R.C. Section 2945.11."

This case involves the robbery and brutal murder of an elderly woman in her own home. There is no question but that defendant was present in the victim's home during the commission of the crimes, together with three other persons. Defendant, however, told the police that he was forced at gunpoint to go to the victim's house but did not participate

in the crimes and that, once inside the victim's home, he, defendant, was knocked unconscious.

In exchange for a promise that the murder and robbery charges against him would be dismissed, one of the participants in the crime agreed to testify against the other accomplices, including defendant, and to plead guilty to aggravated burglary. This accomplice, Michael Minnear, testified that his only involvement was to furnish transportation to the other three and he was to receive $300 or $400 for his participation, which he never received. He testified that he did not know about the murder until he read about it in the newspaper.

Apparently, defendant did make a statement to the police, which was introduced into evidence but is not included in the record on appeal. The record does not include any of the state's exhibits, the court reporter noting merely that these exhibits "are contained in the Franklin County Prosecutor's office," and neither party has seen fit to cause any of such exhibits to be made a part of the record on appeal.

Nevertheless, the police officers did testify as to the substance of the statement, indicating that defendant admitted being at the scene of the crime but contended that he was there because of duress, relating the means of entry, the intent to burglarize the house and the tying up of the victim. Defendant contends that he was then knocked unconscious and does not know what happened thereafter. Later, however, one of the accomplices other than Minnear told defendant what had happened.

A fellow inmate at the county jail testified that, while in jail, defendant admitted planning the burglary with his accomplices for several weeks, participating in the burglary and robbery and killing the victim. There was also evidence connecting defendant to the sale of two gold coins and a diamond pendant, which either he or his mother sold to a pawn shop, the pendant being identified as belonging to the victim, and the gold coins being like ones missing from the victim's home.

By the first assignment of error, defendant contends that the trial court erred in overruling defendant's motion *in limine* with respect to defendant's two prior misdemeanor convictions for petty theft and attempted receiving stolen property. Since a motion *in limine* does not finally determine the issue of admissibility, see State v. Spahr (1976), 47 Ohio App. 2d 221 [1 O.O.3d 289], there was no finality to the determination which would be the appropriate subject of an appeal, the trial court merely refusing to prohibit the prosecutor from asking questions on cross-examination concerning prior convictions if defendant determined to take the stand and testify in his own defense. Since he did not testify, no prejudicial error has been demonstrated. In fact, had defendant testified, the trial court might have reached a different final determination from the tentative one in connection with the motion *in limine*.

The admissibility issue depends upon whether Evid. R. 609(A)(2) has superseded the common-law rule as announced in State v. Murdock (1961), 172 Ohio St. 221 [15 O.O.2d 372]. Despite the provision of Evid. R. 102 that the rules should be construed to state the common law of Ohio unless a change is clearly intended, Evid. R. 609(A) would appear to indicate such a change, stating that evidence of prior conviction to attack credibility may be elicited during cross-examination "* * * only if the crime (1) was punishable by death or imprisonment in excess of one year under the law under which he was convicted, or (2) involved dishonesty or false statement, regardless of the punishment whether based upon state or federal statute or ordinance." Thus, a misdemeanor conviction may still be used to impeach if it "involved dishonesty or false statement." Here, there is no suggestion of false statement. The question is

whether dishonesty was involved. Since the actual record of conviction was not before the trial court, there is no basis upon which the issue could finally be determined. Defendant's written motion does not refer to the misdemeanor convictions alluded to by the assignment of error. These were referred to, apparently for the first time, during discussion of the motions immediately prior to trial, with the prosecutor referring to two misdemeanor theft offense convictions, contending that they were crimes involving dishonesty within the purview of Evid. R. 609(A)(2). However, defendant contends that "dishonesty," as used in the rule, is limited to *crimen falsi,* namely, fraud, perjury and similar offenses.

While there is some support for defendant's position in some federal cases, courts of some states have defined "dishonesty" in a much broader sense so as to include theft offenses. *E.g., Geisleman* v. *State* (1980), ____ Ind. ____, 410 N.E. 2d 1293, and *People* v. *Spates* (1979), 77 Ill. 2d 193, 395 N.E. 2d 563. Although there is some suggestion of limitation in the Staff Notes to the rule, it is inconceivable that the drafters of the rule would not have been more precise and used more limiting language, such as *crimen falsi* or fraud, had such a limitation been intended, rather than using the much broader term "dishonesty." Clearly and undisputedly, a theft is inherently dishonest. Common sense dictates that stealing is a dishonest act. While dishonesty also includes deceit, it is not limited thereto. In light of the provision of Evid. R. 102, *supra,* the common law has been superseded only to the extent clearly indicated by the rules. Since a theft offense could be used to impeach under the common law, and in common parlance theft involves dishonesty, we are constrained to the common-sense conclusion that dishonest acts such as receiving stolen property and stealing are included within the meaning of the word "dishonesty," as used in Evid. R.

609(A)(2). The first assignment of error is not well-taken.

By the second assignment of error, defendant contends that the admission into evidence of his statement constitutes a denial of his constitutional rights. Prior to trial, a hearing was held upon defendant's request to suppress this statement, as to which defendant chose not to testify. This evidence indicates that defendant was given appropriate *Miranda* warnings (*Miranda* v. *Arizona* [1966], 384 U.S. 436 [36 O.O.2d 237]), understood them and voluntarily waived them in writing. There is some indication in the record that assurances were given defendant as to the care for his daughter. There is no evidence, however, of any threat or promise to induce him to waive his rights, other than testimony of defendant's mother to this effect. Even her testimony is that the officer told her he wanted to get to the bottom of the matter and would do everything he could to accomplish that and get it straightened out. There is an indication that defendant was promised something with regard to care for his daughter, but there is no indication that this hinged upon defendant's giving a statement to the police. His mother further testified that the officer told defendant that he would be free to come home if he gave a statement. This is denied by the police officers. We find no error or abuse of discretion on the part of the trial court in overruling the motion. That court was not required to believe the testimony of defendant's mother, which contradicted that of the police officers. The second assignment of error is not well-taken.

By the third assignment of error, defendant contends that the trial court erred in permitting the state to present evidence that he had refused to take a polygraph test. While such evidence is not ordinarily admissible, defendant waived objection under the circumstances of this case. The state was quite willing to delete the last portion of defendant's statement,

which indicated that defendant offered to take a polygraph test, *but* insisted upon explaining that defendant never took one, if this portion remained in the statement. In essence, defense counsel was given a choice whether to exclude the entire statement concerning the polygraph or to permit evidence as to whether the polygraph was given. Defense counsel elected to have the entire statement come in, including the reference to the polygraph. While, as we indicated earlier, the statement itself is not in evidence before us, the following testimony does appear in the record:

"Q. Near the end of that statement was there any discussion about him [the defendant] taking a polygraph?

"A. Yes, there was.

"Q. And did he indicate he wanted to take one?

"A. He said at that time he did. He was told that we would have to get a disposition and we would proceed with it.

"Q. Did you try to set one up?

"A. Yes, and I was advised that his attorney advised him not to take one.

"Q. Well, one was never given?

"A. That is correct. One was not given."

No objection was made to this evidence at the time it was introduced. Under the circumstances, we find that the defendant waived objection to the testimony concerning the polygraph, and the third assignment of error is not well-taken.

By the fourth assignment of error, defendant contends that the trial court erred in admitting two photographs of the victim into evidence. As we have noted earlier, the record on appeal does not include these exhibits, no party having caused the state's exhibits to be included in the record on appeal. Nevertheless, whether to admit such photographs is a matter lying within the sound discretion of the trial court. *State* v. *Hill* (1967), 12 Ohio St. 2d 88 [41 O.O.2d 369]. Defendant has not demonstrated any abuse of discre-

tion on the part of the trial court, and, accordingly, the fourth assignment of error is not well-taken.

By the fifth assignment of error, defendant contends that the trial court erred in excluding written transcripts of prior inconsistent statements of a state's witness. These exhibits are included in the record on appeal. Defense counsel was allowed to examine the statements and to cross-examine the witness concerning them, and there is no suggestion that cross-examination was limited. Rather, defendant contends that the statements themselves should have been admitted pursuant to Evid. R. 613(B), as well as Evid. R. 612. Assuming that the trial court, within its discretion, could have admitted the transcript of the witness' prior testimony into evidence pursuant to either Evid. R. 612 or 613(B), it did not do so, making the issue whether the trial court abused its discretion. See Evid. R. 403.

The provision of Evid. R. 612 that the adverse party may introduce into evidence "* * * those portions [of a writing used to refresh memory] which relate to the testimony of the witness * * *" is necessarily limited in application to impeachment, and the rule must be read *in pari materia* with Evid. R. 613(B). Ordinarily, extrinsic evidence of a prior inconsistent statement of a witness, whether oral or written, is not admissible if the witness admits making the prior inconsistent statement. *Blackford* v. *Kaplan* (1939), 135 Ohio St. 268 [14 O.O 118]. See, also, *Burt* v. *State* (1872), 23 Ohio St. 394, and *Babbitt* v. *Say* (1929), 120 Ohio St. 177. There is no indication that the Rules of Evidence intend to modify this common-law principle so as to render it an abuse of discretion to exclude the extrinsic evidence under such circumstances. It is unclear whether statements were used to refresh the witness' recollection, the indication being that defendant attempted to use them to impeach the witness on cross-

examination. However, the witness contended that his prior statements were consistent with his testimony at trial, except as to his own personal involvement in the crimes. Although defendant contends that the jury did not understand why they did not have the statements in evidence, he has pointed to no specific basis of prejudice by the absence of the extrinsic evidence, and nothing of which the jury was not advised through the vigorous cross-examination of the witness. We find no abuse of discretion, and the fifth assignment of error is not well-taken.

By the sixth assignment of error, defendant contends that the trial court erred in its instruction concerning aider and abettor. Specifically, defendant complains because the trial court charged: "A person who purposely * * * associates himself * * * with another with the purpose of committing a crime is regarded as if he were the principal offender and is just as guilty as if the person performed every act constituting the offense." Defendant contends that this instruction permits one to be convicted of a crime because of his mere presence at the scene, especially since the trial court stated further that: "This is true even if such person was not physically present at the time the crime was committed." We disagree, especially since the trial court went on to explain: "A person engaged in [a] common design with others to burglarize an individual of his property * * * may be, but is not necessarily presumed to acquiesce in whatever would be reasonably necessary to accomplish the object of their enterprise." In addition, the trial court went on to specifically charge with respect to aggravated murder that: "* * * [I]f under the circumstances it may be reasonably expected that the victim's life would be in danger by the manner and means of performing the criminal act conspired, each one engaged in the common design is bound by the consequences naturally or probably arising in its furtherance."

As this court has held on several occasions, the mere presence of a person during the commission of a crime does not make him an aider and abettor. *Columbus v. Russell* (1973), 39 Ohio App. 2d 139 [68 O.O.2d 337]. However, where he is not only present but has also procured, encouraged, or participated in the crime, he may be an aider and abettor. See *State v. Trocodaro* (1973), 36 Ohio App. 2d 1 [65 O.O.2d 1]. The charge as given by the trial court would not permit the jury to find defendant guilty merely because he was at the scene of the crime, nor would it permit a conviction merely because defendant was associated with the perpetrators of the crime. In addition, the instruction required a finding that defendant's associating with the perpetrators of the crime was for the purpose of committing the crime before he could be regarded as an aider and abettor. Even assuming that the instruction could have been made more clear for the jury, we find no prejudicial error, nor was there a specific request for a more clear instruction upon the issue. The sixth assignment of error is not well-taken.

By the seventh assignment of error, defendant contends that the trial court erred in its instruction on aggravated robbery. Since there was no specific objection to the instruction, defendant contends that the instruction as given by the trial court constitutes plain error. The trial court did inadvertently leave out the word "knowingly" from the instruction that a prerequisite of finding defendant guilty of aggravated robbery was that he "obtained or attempted to obtain property of some value." However, immediately following this instruction was the limitation "for the purpose of depriving the owner of that property." In other words, the complete instruction is that the defendant could be found guilty only if he obtained or attempted to obtain property belonging to another person for the purpose of depriving the owner of that property. It is improbable that one could have

that purpose unless he knowingly obtained or attempted to obtain the property, even though both "purpose" and "knowingly" are expressed in R.C. 2913.02(A). In any event, the error of the trial court does not constitute plain error since it is not of such a nature that the outcome of the trial would clearly have been different had the instruction been proper. See *State* v. *Long* (1978), 53 Ohio St. 2d 91 [7 O.O.3d 178]. Under the evidence involved in this case, there is little, if any, basis for finding that the persons who obtained the property of the victim through the robbery did not do so knowingly. The seventh assignment of error is not well-taken.

For the foregoing reasons, all seven assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.

*Judgment affirmed.*

STRAUSBAUGH and MOYER, JJ., concur.