JOURNAL ENTRY AND OPINION
Defendant-appellant William Rogers appeals from his conviction for aggravated robbery. For the following reasons, we affirm the judgment of the trial court.
On July 26, 1999, the grand jury issued an indictment charging appellant with aggravated robbery in violation of R.C. 2911.01 with firearm specifications. At his arraignment on August 13, 1999, appellant entered a plea of not guilty.
As part of a plea agreement, appellant pled guilty to the amended charge of robbery in violation of R.C. 2911.02 on November 22, 1999. However, appellant retained new counsel and, on January 6, 2000, the trial court granted appellant's motion to withdraw this plea.
On January 14, 2000, appellant filed a motion to suppress. The trial court conducted a suppression hearing on February 7, 2000. The trial court overruled appellant's suppression motion, and the case proceeded to trial.
The testimony at the suppression hearing and trial reflects the following: On May 24, 1999, Arnetta Thomas was robbed at a rapid station. According to Ms. Thomas, her attacker pressed a hard object that felt like a gun into her back and said, Stop, or I'll kill you.
Appellant instructed Ms. Thomas to remove her shoes, shirt and jewelry. Ms. Thomas testified that she was also robbed of $54 — two twenty-dollar bills, a ten-dollar bill and four one-dollar bills. Ms. Thomas complied with appellant's instruction to place her possessions on the ground. As appellant gathered her personal property, Ms. Thomas had an opportunity to observe him in her peripheral vision. According to Ms. Thomas, she stared at appellant. Ms. Thomas then watched appellant run from the scene.
Ms. Thomas ran to a gas station across the street. A clerk at the gas station called the police. When the police arrived, Ms. Thomas gave the officers an accurate description of appellant. Ms. Thomas provided the police with the following description:
 I said he was between 5'6" and 5'8", I said that he weighed maybe 150 to 180 pounds, he had braids in his hair, goatee, Indians jacket, dark pants and he was dark skinned.
(Tr. 207.) Patrolman Carlos M. Robles broadcast the description of appellant to his fellow officers. He described appellant as a black male, average height, 5'8" to 5'9, had an Indians jacket on with braids in his hair. (Tr. 252.)
Officer Joseph R. Sedlak responded to the patrolman's broadcast. As he was touring the area near the scene of the crime, Officer Sedlak observed a man that fit the description of the suspect. Appellant fled the scene when Officer Sedlak opened the door of his police car.
The police pursued appellant, and Patrolman Patrick McLain eventually apprehended appellant in the back yard of a nearby residence. Patrolman Robles arrived a short time later with Ms. Thomas. Ms. Thomas then positively identified appellant. Although it was a rainy night, Officer Timothy Stacho testified that the lighting was not a problem during the cold stand identification.
The officers searched the area and found three bags of marijuana; however, the police did not find a gun. Officer Stacho searched appellant and found two wads of cash and a paring knife. One roll of money contained $54 in the exact denominations as the money taken from Ms. Thomas.
At the close of the state's case, the trial court dismissed the firearm specifications. After deliberation, the jury found appellant guilty of aggravated robbery. In a journal entry filed on February 29, 2000, the trial court sentenced appellant to a four-year prison term. Therefrom, appellant filed a timely notice of appeal with this court.
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION TO SUPPRESS.
In his first assignment of error, appellant claims that the trial court erred in denying his motion to suppress. Appellant insists that the procedure used to identify him was suggestive and, therefore, violated his constitutional right to due process.
A cold stand or one-on-one show up identification may be suggestive under certain circumstances. Nevertheless, such identification procedure is permissible unless there is a substantial likelihood of misidentification. See State v. Madison (1980), 64 Ohio St.2d 322. In Neil v. Biggers (1972), 409 U.S. 188, the United States Supreme Court held that the following factors must be considered when making a determination as to the reliability of an identification:
 1. The opportunity of the witness to view the criminal at the time of the crime;
2. The witness' degree of attention;
 3. The accuracy of the witness' prior description of the criminal;
 4. The level of certainty demonstrated by the witness;
 5. The length of time between the crime and the confrontation.
In the instant case, the victim viewed appellant before, during and after the attack. Ms. Thomas first observed appellant when she exited the rapid train. Appellant and another man were sitting on a bench smoking marijuana. Ms. Thomas noticed appellant and the other man because they were the only people at the rapid station. After appellant ordered Ms. Thomas to place her property on the ground, she stared at him as he picked up her belongings. Ms. Thomas then watched as appellant ran from the scene.
The victim's testimony demonstrated a high degree of attention. Ms. Thomas provided the police with an accurate description of appellant prior to the cold stand, including race, height, weight, hair style and clothing. Ms. Thomas testified that she was positive of her identification of appellant. Moreover, the identification was conducted a short time after the robbery.
Under these circumstances, we find that the victim's identification of appellant was reliable. Thus, the trial court did not err in denying appellant's motion to suppress. Appellant's first assignment of error is overruled.
 II. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER CROSS-EXAMINATION OF DEFENDANT.
In the second assignment of error, appellant challenges several statements made by the assistant prosecutor during his cross-examination of appellant. In particular, appellant argues that he was deprived of a fair trial when he was forced to admit his prior theft conviction during cross-examination.
Evid.R. 609(A)(3) provides:
 (A) For the purpose of attacking the credibility of a witness:
 (3) notwithstanding Evid.R. 403(A), but subject to Evid.R. 403(B), evidence that any witness, including an accused, has been convicted of a crime is admissible if the crime involved dishonesty or false statement, regardless of the punishment and whether based upon state or federal statute or local ordinance.
Ohio courts have consistently held that theft, robbery and aggravated robbery are crimes of dishonesty and, therefore, a conviction for theft can be used for impeachment. See, e.g., State v. Dunning (Mar. 23, 2000), Cuyahoga App. No. 75869, unreported, citing State v. Tolliver (1986), 33 Ohio App.3d 110, 113; State v. Johnson (1983),10 Ohio App.3d 14, 16.
Moreover, the trial court immediately instructed the jury as follows:
 Ladies and gentlemen, the fact that this witness happens to have a criminal record can be used by you in determining his credibility, his believability in his testimony. It cannot be used by you for any other purpose.
(Tr. 426.) The trial court repeated this instruction in its general charge to the jury. We must presume that the jury followed these instructions. State v. Smith (1997), 80 Ohio St.3d 89, 111.
Finally, we note that an appellate court will not reverse a trial court's evidentiary rulings unless the complaining party demonstrates prejudice. See State v. Hood (Dec. 16, 1999), Cuyahoga App. No. 75210, unreported, citing State v. McCray (1995), 103 Ohio App.3d 109. Based upon the foregoing, we find that no reversible error in this regard. Appellant's second assignment of error is overruled.
 III. DEFENDANT WAS DENIED A FAIR TRIAL BY REASON OF IMPROPER PROSECUTORIAL ARGUMENT.
As for his third assignment of error, appellant challenges comments made by the prosecution during closing arguments. In particular, appellant bemoans the fact that the assistant prosecutor vouched for credibility of the police officers that testified.
The test regarding prosecutorial misconduct in closing argument is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant. State v. Farmer (Apr. 6, 2000), Cuyahoga App. No. 75869, unreported, citing State v. Smith (1984), 14 Ohio St.3d 13, 14. The trial court must afford both sides wide latitude in closing arguments. State v. Jacks (1989), 63 Ohio App.3d 200,210. It is within the court's sound discretion to determine if a prosecutor has gone beyond the permitted bounds. State v. Benge (1996),75 Ohio St.3d 136.
A judgment will not be reversed if it is clear beyond a reasonable doubt that, absent the prosecutor's remarks, the jury would have found the defendant guilty. Farmer, supra, citing State v. Loza (1994),71 Ohio St.3d 61, 78. An appellate court must review closing arguments in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann (1993), 93 Ohio App.3d 301, 312. The touchstone of this analysis is the fairness of the trial, not the culpability of the prosecutor. State v. Landrum (1990), 53 Ohio St.3d 107, 112, citing Smith v. Phillips (1982), 455 U.S. 209, 219.
As a general rule, a prosecutor should not express personal opinions as to the credibility of witnesses. See State v. Smith (1984),14 Ohio St.3d 13, 15. Nevertheless, upon review of the entire record, we find beyond any reasonable doubt that appellant would have been convicted in the absence of these isolated remarks. Thus, appellant's third assignment of error is overruled.
 IV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR A NEW TRIAL.
In his fourth assignment of error, appellant contends the trial court abused its discretion by denying appellant's motion for a new trial. Appellant argued in his motion for a new trial that he had newly discovered evidence which law enforcement failed to disclose until after the trial, viz., the list of property taken from appellant when he was booked at the police station.
Crim.R. 33(A)(6) provides that a new trial may be granted due to new evidence which the defendant could not have discovered with reasonable diligence and produced at trial. A motion for a new trial made pursuant to Crim.R. 33 is addressed to the sound discretion of the trial court. That decision will not be disturbed upon appeal absent a showing that the trial court abused its discretion. State v. Hawkins (1993),66 Ohio St.3d 339. An abuse of discretion connotes more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, or unconscionable attitude on the part of the trial court. State v. Keenan (1998). 81 Ohio St.3d 133, 137.
To warrant the granting of a motion for a new trial in a criminal case, based on the ground of newly discovered evidence, it must be shown that the new evidence (1) discloses a strong possibility that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. State v. Mack (Oct. 28, 1999), Cuyahoga App. No. 75086, unreported, quoting State v. Petro (1947), 148 Ohio St. 505, syllabus.
The basis of appellant's Crim.R. 32(A)(6) motion was his claim that the police failed to provide his counsel with a copy of the booking sheet until after the underlying trial. We note that appellant was booked on May 26, 1999; notwithstanding, appellant's counsel did not request a copy of the booking sheet until January 7, 2000. As the state notes, the police demonstrated more diligence in this regard than appellant's counsel.
More importantly, the booking sheet merely indicated the property taken from appellant at the station, namely twenty-five cents, laces, belts, keys and a pager. The booking sheet does not refute the fact that the police officers had earlier confiscated approximately $500 from appellant. We find that there is no possibility that the booking sheet would have changed the outcome of the trial. Therefore, appellant's fourth assignment of error is overruled.
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO INSTRUCT ON THE LESSER INCLUDED OFFENSE.
In his fifth assignment of error, appellant argues that the trial court erred when it failed to instruct the jury on the elements of theft. Appellant insists that theft is a lesser included offense of aggravated robbery. However, theft is not a lesser-included offense of aggravated robbery. State v. Carter (2000), 89 Ohio St.3d 593, 600. Thus, we summarily overrule the fifth assignment of error.
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN A JURY QUESTION WAS ANSWERED WITHOUT NOTICE OR PRESENCE OF EITHER DEFENDANT OR COUNSEL.
As for his sixth assignment of error, appellant challenges the trial court's ex parte communication with the jury. As a general rule, a criminal defendant has a fundamental right to be present when a court communicates with the jury after deliberations are under way. State v. Schiebel (1990), 55 Ohio St.3d 71, 90. Any communication with the jury by the trial court outside the presence of the defendant is error which may warrant the ordering of a new trial. Id. at 84.
However, a trial court's ex parte communication with the jury does not mandate reversal if it did not prejudice his right to a fair trial. State v. Wilson (1996), 113 Ohio App.3d 737, 747, citing State v. Abrams (1974), 39 Ohio St.2d 53, paragraph two of the syllabus. When the trial judge merely reiterates the previously given instructions, the defendant's right to a fair trial is not prejudiced by the communication between the judge and jury. Abrams, at 56.
Examples of prejudicial conduct include giving the jury additional instructions, explaining previously given instructions to the jury, or advising the jury that a verdict one way or another is required. See Bostic v. Connor (1988), 37 Ohio St.3d 144, at fn. 6.
In the instant case, the jury wrote, Picture introduced as item of evidence. The trial court replied in writing, Not in evidence as an exhibit. Under the circumstance of this case, we find that the trial court's conduct was harmless beyond a reasonable doubt. Based upon the foregoing, we overrule appellant's sixth assignment of error.
 VII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL AS TO AGGRAVATED ROBBERY.
In his seventh assignment of error, appellant claims that the trial court should have granted his Crim.R. 29 motion for acquittal. Appellant argues that there was insufficient evidence to support his conviction for aggravated robbery.
In State v. Thompkins (1997), 78 Ohio St.3d 380, the Supreme Court of Ohio stated:
 With respect to sufficiency of the evidence, "`sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law. Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy.
 Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486, 55 O.O. 388, 124 N.E.2d 148. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.
Id. at 386-387.
The elements of aggravated robbery are set forth in R.C. 2911.01:
 (A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 (1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
 (2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
 (3) Inflict, or attempt to inflict, serious physical harm on another.
In the instant case, the victim testified that appellant stuck a hard object into her back when he robbed her. According to the victim, the object felt like a gun. Appellant stresses the fact that the victim never saw a gun. Appellant also notes that he did not have a gun in his possession when the police caught him.
However, appellant did have a knife in his possession and, pursuant to R.C. 2923.11, a knife is also a deadly weapon.
The state suggests that appellant stuck the knife in his victim's back and pretended that it was a gun. We note that the knife was the only hard object in appellant's possession. The victim could have easily mistaken the handle of the knife for the barrel of a gun. [A]n item carried or adapted for use as one type of weapon is still a `deadly weapon,' even though it is not capable of being the kind of weapon it is disguised as or purported to be. State v. Powers (1995), 106 Ohio App.3d 696, 702. In Powers, the defendant robbed his victim with a wrench disguised with a pair of black socks. The Ninth Appellate District held:
 * * * Appellant carried the wrench as a weapon, for the purpose of committing a crime.
 The fact that he carried it disguised as a different sort of weapon does not alter this fact.
See also State v. Hicks (1984), 14 Ohio App.3d 25, 26 (The courts have previously found inoperable guns, starter pistols, and inoperative BB and pellet guns `capable of inflicting death' because of their possible use as bludgeons.).
In the instant case, the state presented sufficient evidence to support its theory that appellant used the knife as a simulated gun during the robbery or, in the alternative, discarded a real gun during his attempted escape. Based upon the foregoing, appellant's seventh assignment of error is overruled.
 VIII. THE VERDICT IN THIS CASE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
In his eighth assignment of error, appellant argues that his conviction for aggravated robbery was against the manifest weight of the evidence. In particular, appellant attacks the reliability of the victim's identification of him.
In Thompkins, supra, the Supreme Court of Ohio stated:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis added.) Black's, supra, at 1594. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").
Id. at 387.
In the case sub judice, we find that the jury rendered the correct verdict. As discussed above, the victim's identification of appellant was accurate and reliable. Based upon her testimony and collaborating evidence, we find that appellant's conviction for aggravated robbery was not against the manifest weight of the evidence. The eighth assignment of error is overruled.
 IX. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS IMMEDIATELY SENTENCED TO A TERM OF IMPRISONMENT BEYOND A MINIMUM SENTENCE.
As for his final assignment of error, appellant challenges his four-year prison sentence for aggravated robbery based upon the guidelines set forth in R.C. 2929.14(B). Appellant asserts that the trial court should have imposed the minimum term of imprisonment for a felony of the first degree, viz., three years. R.C. 2929.14(A)(1).
R.C. 2929.14(B) provides:
 Except as provided in division (C), (D)(2), (D)(3), or (G) of this section, in section 2907.02 of the Revised Code, or in Chapter 2925. of the Revised Code, if the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The Supreme Court of Ohio has held that the sentencing court must impose the minimum sentence on a first-time offender unless the record of the sentencing hearing reflects that the court found that either or both of the two statutorily sanctioned reasons for exceeding the minimum term warranted the longer sentence. State v. Edmonson (1999), 86 Ohio St.3d 324,326.
In the instant case, the court merely stated:
 Examining the record with respect to your prior involvement with the law, which is somewhat minimal, frankly, but also examining the seriousness of the offenses that you have been convicted of, as well as the emotional harm that was occasioned to this victim, it's the Court's finding and decision today that you be sentenced to the Lorain Correctional Institution for a period of four years. * * * (Emphasis added.)
(Tr. 519-520.) Although the trial court did not use the talismanic words of R.C. 2929.14(B), the court's colloquy clearly indicates that it had determined that the shortest prison term would demean the seriousness of appellant's conduct. Based upon the foregoing, we overrule appellant's ninth assignment of error.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
The Defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
TERRENCE O'DONNELL, P.J. and JOHN T. PATTON, J. CONCUR
 ___________________________ LEO M. SPELLACY, JUDGE