[Cite as *State v. Stanford*, 2018-Ohio-2983.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

State of Ohio                                        Court of Appeals No. H-17-010

    Appellee                                    Trial Court No. CRI 2017-0290

v.

Christopher G. Stanford                        **DECISION AND JUDGMENT**

    Appellant                                  Decided:  July 27, 2018

* * * * *

James Joel Sitterly, Huron County Prosecuting Attorney,
for appellee.

Mollie B. Hojnicki-Mathieson, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Christopher Stanford, appeals the August 2, 2017

judgment of the Huron County Court of Common Pleas which, following a jury trial

finding him guilty of two counts of aiding and abetting trafficking in oxycodone and one

count of trafficking in oxycodone, sentenced appellant to a total of 31 months of imprisonment. For the following reasons, we affirm the trial court's judgment.

{¶ 2} On April 7, 2017, appellant was indicted on two counts of aiding and abetting in the trafficking of oxycodone in violation of R.C. 2923.03(A)(2) and 2925.03(A)(1) and (C)(1)(a), and one count of trafficking in oxycodone, in violation of R.C. 2925.03(A)(1) and (C)(1)(a). Three controlled purchases of oxycodone made by a confidential informant working for the Norwalk Police Department form the basis of these charges. Following his arrest on March 14, 2017, appellant pled not guilty to the charges.

{¶ 3} A jury trial commenced on July 19, 2017, and the following relevant evidence was presented. Count 1, aiding and abetting in the trafficking of oxycodone, arises from events on January 18, 2017. Detectives Daniels and Fulton of the Norwalk Police Department prepared the informant, K.M., and surveilled appellant's residence while the controlled purchase took place. Appellant and his girlfriend, Michelle Irby, were present and interacted with K.M. during the transaction. K.M. waited outside the residence for appellant and Irby to arrive and followed them into the house. Appellant spoke conversationally with K.M. while Irby exchanged the money for the pills. The transmitter worn by K.M. recorded appellant saying "seventy-five for three" in response to a comment by Irby. Detectives gave K.M. $75 to purchase three oxycodone pills.

{¶ 4} By means of a transmitter carried on K.M.'s person, detectives listened and recorded the transaction. Detective Daniels, Detective Fulton, and K.M. all testified at

2.

trial regarding the details of the purchase. On cross-examination, K.M.'s testimony regarding which individual took possession of the buy money was shown to contradict recorded statements made during K.M.'s debriefing with officers immediately following the purchase. Detective Daniels testified that Irby collected the money, a statement corroborated by recorded audio of K.M.'s debriefing following the purchase.

{¶ 5} Count 2, trafficking in oxycodone, arose from events of January 20, 2017. K.M. testified that appellant apprised him of five, five-milligram oxycodone pills available for sale prior to the transaction. Detectives Daniels and Fulton prepared K.M. and surveilled appellant's vehicle during the transaction from approximately 75 feet away. During debriefing, K.M. stated that he purchased pills in a hand-to-hand exchange with appellant inside appellant's vehicle. Appellant was alone in his vehicle when K.M. entered to make the purchase. Appellant then left the vehicle, entered his residence, and returned to the car before the sale's completion. Detectives listened to audio of the transaction as it occurred; however, due to malfunctioning equipment no recording exists. From the detectives' position, appellant was visible during the purchase, but the hand-to-hand exchange was not. Both the detectives and K.M. testified at trial as to the events of the transaction.

{¶ 6} Count 3, aiding and abetting in trafficking of oxycodone, arose from events of January 25, 2017. Detectives Daniels and Fulton were present and again prepared K.M. prior to the transaction taking place in appellant's home. K.M. called beforehand and spoke with appellant who greeted him at the door and let him inside the residence;

3.

appellant left the residence to purchase cigarettes. Irby conducted the transaction during appellant's absence. In the recording of the transaction, a disagreement as to the agreed upon price can be heard; Irby believed the price was $25 per pill, K.M. disagreed showing her a text from appellant stating the price as $23 per pill. When appellant returned, he confirmed the price stated in the text. Irby gave K.M. only two of the three pills paid for upon learning the pills were meant for a mutual acquaintance who owed her money. Detectives listened and recorded the transaction via a transmitter. Both the detectives and K.M. testified at trial regarding the details of the transaction.

{¶ 7} In preparation for all three controlled purchases, K.M. was searched, wired, and provided documented buy money. At trial, K.M. testified that the controlled sales were arranged with appellant "through the phone," but could not recall whether it was by call or text. Detective Fulton's testimony later clarified that none of the buys were arranged by controlled phone call; rather, K.M. independently arranged all three buys. Copies of texts exchanged between K.M. and appellant were not surrendered to Detective Fulton and were never before the jury

{¶ 8} On July 20, 2017, the jury returned a verdict finding appellant guilty of all charges. This appeal followed with appellant raising three assignments of errors for review:

> I. The evidence at appellant's trial was insufficient to support the convictions and appellant's convictions are against the manifest weight of the evidence.

4.

II. Appellant was denied effective assistance of counsel as guaranteed by the United States and Ohio Constitutions.

III. The trial court erred when it prevented appellant from introducing into evidence prior bad acts of the confidential informant, and allowed the admission of improper hearsay evidence.

{¶ 9} In appellant's first assignment of error, he argues that the evidence presented at trial was insufficient to support convictions on Counts 1 and 3, and that all three convictions are against the manifest weight of the evidence. Appellant asserts that evidence supporting his aiding and abetting convictions merely establish appellant's presence at or around the time of the controlled purchases.

{¶ 10} The Supreme Court of Ohio has held that "mere presence of an accused at the scene of a crime is not sufficient to prove, in and of itself, that the accused was an aider and abettor." *State v. Widne*r, 69 Ohio St.2d 267, 269, 431 N.E.2d 1025 (1982); *compare Smith v. State*, 41 Ohio App. 64, 67-68, 179 N.E. 696 (9th Dist.1931). Nevertheless, evidence of aiding and abetting may be either direct or circumstantial; consequently, criminal intent may be inferred from "'presence, companionship and conduct before and after the offense is committed.'" *State v. Cartellone*, 3 Ohio App.3d 145, 150, 444 N.E.2d 68 (8th Dist.1981), quoting *State v. Pruett*, 28 Ohio App.2d 29, 34, 273 N.E.2d 884 (4th Dist.1971).

{¶ 11} Sufficiency of the evidence is "'that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally

5.

sufficient to support a jury verdict as a matter of law.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), quoting Black's Law Dictionary 1433 (6 Ed.1990). In *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), the Ohio Supreme Court outlined the analysis required to apply this standard:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (*Jackson v. Virginia* [1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.) *Id.* at paragraph two of the syllabus.

{¶ 12} R.C. 2923.03(A)(2) reads: "No person, acting with the kind of culpability required for the commission of an offense, shall * * * aid or abet another in committing the offense." To aid and abet means "'to assist or facilitate the commission of a crime, or to promote its accomplishment.'" *State v. Johnson*, 93 Ohio St.3d 240, 243, 754 N.E.2d 796 (2001), quoting Black's Law Dictionary (7 Ed.Rev.1999) 69. The Ohio Supreme Court has held:

> [T]o support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant

6.

supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal. Such intent may be inferred from the circumstances surrounding the crime. *Id.* at 245-246.

{¶ 13} From appellant's presence, companionship, and conduct preceding and following the January 18 purchase, it may reasonably be inferred that appellant acted knowingly. *Cartellone* at 150. Appellant's interjection as to price is audible on the recording of the transaction. Coupled with consistent testimony on this point from all three witnesses, there is adequate evidence to support a reasonable jury's conclusion that by advising on the price of the pills, appellant aided and abetted in the trafficking of oxycodone by facilitating the commission of the offense. *Johnson* at 243. As such, there is sufficient evidence in the record for the jury to conclude that appellant knowingly aided and abetted Irby in the sale of oxycodone on January 18, 2017.

{¶ 14} On January 25, appellant communicated with K.M. prior to the transaction and upon returning to the residence, he again advised Irby of the agreed price. Like Count 1, appellant's conduct preceding and following the purchase on January 25, raises the reasonable inference that appellant acted knowingly. *Cartellone* at 150. In this instance, the audio recording of the transaction references the text message, further substantiating the conclusion that communications were exchanged and appellant was the contact person. The reference to a text message, with which both K.M. and appellant

7.

appear to be familiar, in the audio recording reasonably supports the conclusion that appellant's facilitation constituted aiding and abetting. *Johnson* at 243.

{¶ 15} As before, there is adequate evidence to support the conclusion that appellant advised Irby as to the price of the pills, thereby aiding and abetting in the traffic of oxycodone. Irby appears unaware of any specifics regarding the sale, while appellant appears to have set a price via text which was ultimately adhered to. A reasonable jury could conclude that this support and assistance constitutes aiding and abetting. Hence on Count 3, sufficient evidence exists in the record for the jury to reasonably conclude that appellant knowingly aided and abetted Irby in the sale of oxycodone on January 25, 2017.

{¶ 16} As to the remaining count of trafficking in oxycodone, there is evidence on the record which, if believed by the trier of fact, would support appellant's conviction beyond a reasonable doubt. Count 2 arose from a controlled buy on January 20, which took place in appellant's vehicle parked outside his residence. Due to an equipment malfunction, audio from K.M.'s transmitter failed to record; however, detectives heard the transaction as it occurred and testified to that firsthand knowledge at trial.

{¶ 17} The elements of R.C. 2925.03(A)(1) require appellant to have knowingly sold or offered to sell a controlled substance. State's expert witness testified at length as to the nature of the substances seized from the three controlled buys; pills from all three purchases were found to be oxycodone, a Schedule II controlled substance. Appellant's awareness of the circumstances surrounding the sale reasonably extended to the prescription nature of the pills offered and sold to K.M., such that knowledge might

8.

reasonably be inferred. Though officers were unable to see the hand-to-hand exchange, K.M., having been searched before the buy, returned from the transaction with five pills and change. It may reasonably be inferred that appellant's offer to sell five, five-milligram oxycodone pills culminated in a sale on January 20. K.M. returned after the buy with five oxycodone pills, all contact having been with appellant. Therefore, viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of trafficking in oxycodone. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus.

{¶ 18} In reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 19} Appellant's manifest weight argument asserts, first that the state merely established appellant's presence at or around the time of the controlled buys, and second that the state's case rested entirely upon K.M.'s credibility. In the first case, the record includes the testimony of detectives Fulton and Daniels, and K.M., all of whom were involved in each of the controlled buys and have firsthand knowledge of the transactions. As discussed above there are numerous facts suggesting appellant's involvement, not just

9.

his presence. The jury evaluated the body of testimony presented and witness credibility, finding appellant guilty beyond a reasonable doubt; the record supports that determination such that upholding appellant's convictions would not be a manifest miscarriage of justice.

{¶ 20} As to the second part of appellant's argument, both Detective Fulton and K.M. testified regarding K.M.'s qualification as a confidential informant. At another officer's suggestion, Detective Fulton approached K.M. following his arrest for petty theft. Prior to enlisting K.M., Detective Fulton received information from several confidential informants pointing to appellant's residence as a place where pills were sold; K.M. had known appellant for approximately two years. In exchange for helping the Norwalk Police Department conduct controlled buys with appellant, K.M. received no jail time for his pending charges and was paid for participating in two of the three buys.

{¶ 21} During his trial testimony, Detective Fulton explained that a criminal record or warrant does not necessarily preclude an individual from use as a confidential informant. He stated: "We are using people that are not the top notch layer of society here— because we are buying drugs" and explained: "That's why we search people before and after buys. That's why conduct surveillance. That's why we put a recording device on them, for their protection and to tell what the hell they are doing." For each controlled buy, detectives searched K.M. before and after the purchase, listened to audio of the purchase via transmitter, and provided documented buy money.

10.

{¶ 22} Appellant challenges K.M.'s credibility based on his criminal record and impeachment during trial. Detective Fulton testified to being familiar with K.M.'s reputation and running a background check prior to engaging him as a confidential informant, but admitted the check was not all encompassing. He detailed some of the offenses that would disqualify an individual from participating as a confidential informant; according to Fulton, K.M.'s history did not present any of these problems. Regarding impeachment, K.M. testified on direct examination that appellant provided the pills and collected the buy money during the January 18 transaction. State's exhibit No. 1 was played for the jury on cross-examination; the recording of K.M.'s debriefing immediately following the buy indicates that Irby picked up the money and provided the pills. When asked if he had lied during direct, K.M. responded that he had forgotten, that things from January are hard to remember.

{¶ 23} An appellate court weighs all evidence and reasonable inferences and considers witness credibility to determine whether the jury clearly lost its way. *State v. Thompkins*, 78 Ohio St.3d at 387. Whatever the credibility of K.M.'s testimony, adherence to police procedure in each controlled buy limited the opportunity for K.M.'s participation in the purchases to corrupt the integrity of the buys themselves. The jury evaluated the body of testimony presented and relative witness credibility and found appellant guilty on all three counts. A reviewing court will interfere with a factual finding of the trier of fact only if a reasonable juror could not have found the witness credible. The facts of this case do not suggest a finding of guilt was unreasonable given

11.

the evidence in the record; therefore, upholding appellant's convictions is not a manifest miscarriage of justice. Appellant's first assignment of error is not well-taken.

{¶ 24} In his second assignment of error appellant alleges denial of effective assistance of counsel. Absent proof to the contrary, there exists a presumption that counsel competently and properly represented the accused during trial. *State v. Hamblin*, 37 Ohio St.3d 153, 155-156, 524 N.E.2d 476 (1988). Reversal of a conviction based upon ineffective assistance of counsel requires that the defendant show, first, that counsel's performance was deficient and, second, that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial. *State v. Jackson*, 92 Ohio St.3d 436, 445-446, 751 N.E.2d 946 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Lytle*, 48 Ohio St.2d 391, 396-397, 358 N.E.2d 623 (1976).

{¶ 25} Judicial scrutiny of counsel's performance must be highly deferential. *Strickland* at 689. Therefore, the court must determine whether, in light of all the circumstances of the case, counsel's challenged acts or omissions were outside the range of professionally competent assistance at the time of counsel's conduct. *Id.* at 690. Counsel must be afforded wide latitude when making tactical decisions and the court will not second-guess trial strategy. *State v. Tibbetts*, 92 Ohio St.3d 146, 166, 749 N.E.2d 226 (2001).

{¶ 26} In this case, appellant contends that counsel failed to object when witness testimony referenced a prior investigation of appellant by the police. It is well-settled

12.

that the failure to object to error alone is not enough to sustain a claim of ineffective assistance of counsel. *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). The fact that "'objections tend to disrupt the flow of a trial, [and] are considered technical and bothersome by the fact-finder,'" is a legitimate concern at trial such that it is reasonable not to object. *State v. Campbell*, 69 Ohio St.3d 38, 53, 630 N.E.2d 339 (1994), quoting Jacobs, Ohio Evidence (1989), at iii-iv. Accordingly, any single failure to object commonly falls short of error unless the evidence sought is especially prejudicial. *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006).

{¶ 27} Here, appellant claims the state sought to depict him as "a bad person, who law enforcement believed was selling drugs." However, the mere mention of prior investigations by police, in light of other evidence of appellant's past interactions with police presented at trial, does not undermine confidence in the outcome of the case. Accordingly, counsel's failure to object was not a substantial violation of defense counsel's essential duties and no reasonable probability that the result of the proceeding would have been different exists to support appellant's claim.

{¶ 28} Appellant also challenges counsel's conduct in eliciting testimony regarding his prior incarceration when attempting to ascertain K.M.'s motivation. Eliciting disadvantageous testimony in the process of impeaching a witness's motivation may be considered trial strategy. As to prejudice, "inadmissible evidence about a prior crime is prejudicial, unless the reviewing court finds beyond a reasonable doubt that it

13.

did not affect the outcome." *State v. Williams*, 55 Ohio App.3d 212, 215, 563 N.E.2d 346 (8th Dist.1988). In the instant case, in light of all the evidence in the record, it is improbable that this single reference contributed in any noticeable degree to appellant's convictions. Therefore, no reasonable possibility exists that the testimony contributed to the appellant's conviction beyond a reasonable doubt. Appellant's second assignment of error is not well-taken.

{¶ 29} Appellant's third assignment of error challenges evidentiary rulings made by the lower court during trial. Appellant asserts that the trial court erred by preventing appellant from introducing into evidence prior bad acts of the confidential informant, while allowing admission of improper hearsay evidence. It is well-established that the admission or exclusion of relevant evidence rests within the sound discretion of the trial court such that a decision will not be reversed absent an abuse of discretion materially prejudicing the defendant. *State v. Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126 (1967).

{¶ 30} Appellant contends that defense questioning of K.M. regarding prior bad acts was permissible impeachment under Evid.R. 608(B) and, thus, the court sustaining the state's objection was error. Evid.R. 608(B) provides:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Evid.R. 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if

14.

clearly probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness's character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

{¶ 31} During defense's cross-examination of K.M., counsel asked: "As at least three other separate felony cases have been dismissed over the years, perhaps, on the basis of your name?" The state objected and the court sustained the objection. Evid.R. 608 expressly limits evidence of a witness's prior bad acts to evidence "clearly probative of truthfulness or untruthfulness," requiring the inquiry to lead to particular instances of conduct. *State v. Osborne*, 6th Dist. Huron No. H-96-013, 1997 Ohio App. LEXIS 1849, *19 (May 9, 1997), citing *State v. Green*, 66 Ohio St.3d 141, 147, 609 N.E.2d 1253 (1993).

{¶ 32} Here, the defense went beyond an inquiry into K.M.'s propensity for truthfulness as evidenced by the dismissed felony charges. Rather, the implication of the question was that K.M. repeatedly received consideration based on his family name. The remark does nothing to impugn the truthfulness of K.M.'s testimony at trial; rather it aims to disparage K.M. himself without any evidence in the record to support the innuendo. Inquiry into K.M.'s family ties was tangential to the relevant inquiry into K.M.'s truthfulness; as such, it was within the trial judge's discretion to limit the scope of cross-examination and exclude the evidence.

15.

**{¶ 33}** Defense rearticulated the question during a proffered cross-examination of Detective Fulton. The exchange provided:

> Attorney Longo: All right. I guess this is the bottom line question that I really -- His Honor did not want me to ask in front of the jury. This is -- his circumstances being a little unusual, were you aware that on four completely separate occasions he's had four completely separate clusters of felony charges that just got dismissed and never got picked back up?
>
> Detective Fulton: No, not at all.
>
> Attorney Longo: All right. Thank you. That's really – that's it for the proffer, Your Honor.

**{¶ 34}** Considering defense's question as restated, the issue remains as to whether K.M.'s dismissed theft charges are probative of his character for truthfulness as required by Evid.R. 608. While evidence impeaching K.M.'s credibility as the confidential informant who conducted the controlled purchases is relevant, as set out above, assessment of the probative value of evidence rests within the sound discretion of the trial judge. *Hymore*, 9 Ohio St.2d 122, 128, 224 N.E.2d 126. In relation to Evid.R. 609, Ohio courts have held that "'a theft offense could be used to impeach under the common law, and in common parlance theft involves dishonesty.'" *State v. Beckett*, 6th Dist. Lucas No. L-84-153, 1984 Ohio App. LEXIS 11124, *5 (Oct. 12, 1984), quoting *State v. Johnson*, 10 Ohio App.3d 14, 16, 460 N.E.2d 625 (10th Dist.1983). All of K.M.'s dismissed charges involved theft.

16.

**{¶ 35}** While K.M.'s dismissed felonies could have been probative of truthfulness, the charges were unrelated to K.M.'s service as a confidential informant. Considering the implication of the original question and the extent to which other testimony addressed K.M.'s criminal proclivities, the trial court's exclusion of the evidence was not unreasonable or arbitrary. Appellant asserts the aforementioned error created such prejudice as to deny him the right to due process and a fair trial. Nevertheless, any testimony defense's question might have elicited from K.M. would have been cumulative of testimony given on K.M.'s cross-examination. K.M. explained the theft charges leading to his engagement as a confidential informant, which was more recent and with similar implications of dishonesty. Accordingly, exclusion of other instances of such conduct did not materially prejudice the appellant.

**{¶ 36}** Appellant also contends that testimony given by the detectives was impermissible hearsay evidence. Hearsay is an out-of-court statement offered into evidence to prove the truth of the matter asserted. Evid.R. 802. Evid.R. 803 states that hearsay evidence is not admissible except as otherwise provided by law. Appellant points to the following as improperly admitted hearsay evidence:

> Prosecutor: Okay. And based on what you heard in the three incidents, and the recordings from both the 18th and the 25th, is what you know about that match [K.M.'s] description of what had happened?

17.

Mr. Longo: Your Honor, I'm going to object. [K.M.] has, obviously, not testified yet. I think this calls for a conclusion based on hearsay.

The Court: The objection is overruled. You may answer if you know.

{¶ 37} In this instance, Detective Daniels was asked to state his firsthand knowledge of what he heard during the controlled buys and what he knew from K.M.'s debriefing of what occurred during the controlled purchases. A statement offered to prove knowledge is excluded from the definition of hearsay, as it is not offered to prove the truth of the matter asserted. Accordingly, Detective Daniels statement was admissible non-hearsay. The second instance of alleged hearsay reads:

Prosecutor: Okay. How did you and Mr. Fulton know to provide him $75?

Detective Daniels: [K.M.] said that, that's what he was told by Mr. Stanford that he needed to purchase the three pills.

Attorney Longo: Object. Clearly hearsay.

The Court: Objection overruled.

Attorney Longo: Move to strike.

The Court: Motion to strike is overruled.

{¶ 38} Detective Daniels' statement is potential double hearsay under Evid.R. 805. To be admissible "each part of the combined statement [must conform with an exception

18.

to the hearsay rule." *Id.* First, it is well settled that statements offered to explain officers' conduct while investigating a crime are not hearsay. *State v. Thomas*, 61 Ohio St.2d 223, 232, 400 N.E.2d 401 (1980). Detective Daniels' testimony regarding K.M.'s statements was offered to explain the detectives' conduct in preparing the informant, and therefore was not offered for the truth of the matter asserted. Second, Detective Daniels' statement regarding appellant's statement is an admission by a party-opponent and thus exempt from the definition of hearsay. Evid.R. 801(D)(2). Moreover, statements offered to prove personal knowledge do not assert the truth of the matter asserted and are therefore not hearsay. As such, the statement did not amount to impermissible hearsay and its admission was proper. Appellant's third assignment of error is not well-taken.

{¶ 39} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair proceeding, and the judgment of the Huron County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.               _____
                                                     JUDGE

Thomas J. Osowik, J.

                                           _____
Christine E. Mayle, P.J.                             JUDGE
CONCUR.

                                           _____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.