OPINION
{¶ 1} Defendant, Tony Hill, appeals from his conviction and sentence for domestic violence.
{¶ 2} Defendant was indicted on November 12, 2002, on one count of domestic violence in violation of R.C. 2919.25(A). The offense alleged arose from an incident involving Defendant and his wife that occurred on July 9, 2002. On February 26, 2003, Defendant was indicted on a second count of domestic violence based on an incident that occurred on November 10, 2002. Defendant was found guilty following a jury trial on count one but not guilty on count two. The trial court sentenced Defendant to nine months imprisonment.
{¶ 3} The evidence presented by the State at trial demonstrates that at approximately 10:00 p.m. on July 9, 2002, Defendant dropped off his wife, LaMicha White-Hill ("Mrs. Hill"), at the emergency room of Good Samaritan Hospital. Officer Mark Ponichtera of the Dayton Police Department was subsequently dispatched to the hospital on a domestic violence complaint and made contact with Mrs. Hill.
{¶ 4} Officer Ponichtera observed that Mrs. Hill was perspiring, that her hair was disheveled, that she had deep abrasions to her face and a substantial laceration to the top of her head, that dried blood was on the front of her shirt and that her shirt was torn. Officer Ponichtera asked Mrs. Hill how she had sustained her injuries. Mrs. Hill indicated that she was in a struggle with Defendant and was afraid of him. Mrs. Hill subsequently provided Officer Ponichtera a written statement detailing what had happened.
{¶ 5} Melissa Rumschik, a registered nurse at Good Samaritan Hospital, saw Mrs. Hill at 10:30 p.m. Mrs. Hill told Nurse Rumschik that she had been struck in the head with a cordless telephone, scratched in the face, and hit. Mrs. Hill received two stitches for the laceration to her head.
{¶ 6} Officer Ponichtera left the hospital and went to 2626 North Gettysburg Avenue, Mrs. Hill's residence, to look for Defendant. Officer Ponichtera knocked on the door but no one answered. When he looked through the windows, Officer Ponichtera observed that the residence was in disarray; there were broken lamps, overturned tables and pieces of a telephone on the living room floor.
{¶ 7} Mrs. Hill testified for the defense at trial. She stated that Defendant had not caused the scratches seen on her face on July 9, 2002. Rather, she stated that she sustained those injuries in a fight with Defendant's girlfriend in the parking lot of Hook's Barbeque at 8:00 or 9:00 that night. Mrs. Hill said that she returned home after the fight, told Defendant what had happened, and ordered him to call the woman to break off the relationship.
{¶ 8} It appears that Defendant called the other woman, but when Defendant didn't tell the woman what Mrs. Hill wanted him to say, Mrs. Hill asked him for the phone to the woman herself. While Mrs. Hill was looking away, Defendant tossed her the phone and it hit her in the head, causing her to bleed. She believed that Defendant hadd not intentionally hit her with the phone.
{¶ 9} Mrs. Hill testified that she lied to the police because she was angry at Defendant for cheating on her and wanted revenge. She felt that if she was going to get in trouble for the fight she had with Defendant's mistress, Defendant should be in trouble too. She denied that the information she provided to police in her written statements was true.
{¶ 10} The jury also heard testimony from Officer Ponichtera and hospital personnel concerning Mrs. Hill's condition and appearance. The jury subsequently returned verdicts of guilty and not guilty on the two charges of domestic violence.
{¶ 11} Defendant timely appealed to this court from his conviction and sentence.
 FIRST ASSIGNMENT OF ERROR
{¶ 12} "The trial court abused its discretion in overruling the defendant's motion for a continuance."
{¶ 13} The grant or denial of a continuance is a matter entrusted to the sound discretion of the trial court, and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v. Jones, 91 Ohio St.3d 335, 342,2001-Ohio-57; State v. Unger (1981), 67 Ohio St.2d 65, 67. The factors to be considered include: the length of the requested continuance; any prior continuances; the inconvenience to the litigants, witnesses, opposing counsel and the court; reasons for the delay; whether the defendant contributed to the delay; and other relevant factors. Unger, supra; State v. Landrum (1990),53 Ohio St.3d 107. An abuse of discretion means more than a mere error of law or an error in judgment. It implies an arbitrary, unreasonable, unconscionable attitude on the part of the trial court. State v. Adams (1980), 62 Ohio St.2d 151.
{¶ 14} During the lunch recess on the first day of trial, after the jury was sworn, both parties had given their opening statements and three witnesses had testified for the State, Defendant informed the trial court that he wanted new counsel. Defendant told the court that he had not met with his counsel prior to the start of the trial to discuss his case. Defendant indicated that he hadn't known where his counsel's office was located, and, although he attempted to meet with his counsel the day before the trial began, he was unsuccessful because the building where counsel worked was closed. On those facts and circumstances, the trial court denied Defendant's request for new counsel and for a continuance for that purpose.
{¶ 15} The record indicates that Defendant was out of jail on bond for several months prior to his trial, and that during that time was present with his attorney for scheduling conferences in court. Clearly, Defendant had ample opportunity to meet with his attorney and discuss his case prior to trial. In that regard we note that Defendant does not allege that his attorney actually refused to meet or communicate with him prior to trial.
{¶ 16} Because trial had commenced, the delay would inevitably result from allowing Defendant to obtain new counsel, and affording new counsel time to prepare for trial would have greatly inconvenienced everyone in the case. Given the timing of Defendant's request, and the fact that up to that point Defendant had not expressed any dissatisfaction or concern with this court-appointed counsel, the trial court could reasonably conclude that Defendant's request was made in bad faith and for purposes of delay. Jones, supra.
{¶ 17} Defendant has not shown that he was denied effective assistance of counsel in this case. Defendant's counsel never stated that he was not prepared for trial. Neither did Defendant make that claim, nor did he claim that defense counsel was performing deficiently, that counsel was not handling his defense in the way he wanted, or that there had been a total breakdown in communication between Defendant and his counsel.
{¶ 18} The record supports a finding that defense counsel was prepared for trial and that he vigorously defended against the charges. His efforts resulted in Defendant's acquittal on one of the two felony charges against him. Defendant's reason for wanting new counsel, because he had not met with counsel prior to trial, is not sufficient to demonstrate a break-down in the attorney-client relationship of such magnitude as to jeopardize Defendant's right to effective assistance of counsel and establish good cause for the substitution of court-appointed counsel. State v. Murphy, 91 Ohio St.3d 516, 523,2001-Ohio-112; State v. Coleman (1988), 37 Ohio St.3d 286, 292.
{¶ 19} On the facts and circumstances present in this case, the trial court reasonably denied Defendant's request for substitution of counsel and for a continuance for that purpose. No abuse of discretion is demonstrated.
{¶ 20} The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
{¶ 21} "The court committed prejudicial error in not inquiring about the ineffectiveness and adequacy of the defendant's attorney."
{¶ 22} Defendant argues that the trial court erred when it failed to make an on-the-record inquiry into a complaint he raised during the trial concerning the adequacy of his court-appointed counsel's performance.
{¶ 23} In order to establish good cause to warrant removal and substitution of his court-appointed counsel, a defendant must demonstrate a breakdown in the attorney-client relationship of such magnitude as to jeopardize his right to effective assistance of counsel. State v. Murphy, 91 Ohio St.3d 516, 2001-Ohio-112;State v. Coleman (1988), 37 Ohio St.3d 286. When an indigent defendant complains about the adequacy of his court-appointed counsel's performance during the trial, it is the duty of the trial court to inquire into that complaint and make that inquiry a part of the record. State v. Deal (1967), 17 Ohio St.2d 17. Once the court makes the inquiry, its decision as to whether to discharge court-appointed counsel will not be reversed absent an abuse of discretion. State v. Carter (1998),128 Ohio App.3d 419.
{¶ 24} When the trial court learned during the first day of trial that Defendant had requested removal and substitution of his court-appointed counsel, the trial court addressed Defendant personally and inquired into his complaint. That inquiry was made a part of the record in compliance with Deal, supra. On this record the trial court fulfilled its duty to inquire into Defendant's complaint about his counsel. Furthermore, Defendant did not demonstrate a sufficient breakdown in the attorney-client relationship to warrant removal and substitution of his court-appointed counsel. The trial court did not abuse its discretion in denying Defendant's request for new counsel.
{¶ 25} The second assignment of error is overruled.
 THIRD ASSIGNMENT OF ERROR
{¶ 26} "The court committed prejudicial error in admitting the written statements of the witness when she admitted that her testimony in court was different from her statement to the police."
{¶ 27} Defendant argues that the trial court abused its discretion in admitting the victim's written statements to police at trial that are inconsistent with her testimony on direct examination.
{¶ 28} A trial court has broad discretion whether to admit or exclude evidence and its decision in such matters will not be disturbed on appeal absent an abuse of discretion. State v.Graham (1979), 58 Ohio St.2d 350, 352.
{¶ 29} Evid.R. 613 governs impeachment by self-contradiction and provides in relevant part:
{¶ 30} "(B) Extrinsic evidence of prior inconsistent statement of witness. Extrinsic evidence of a prior inconsistent statement by a witness is admissible if both of the following apply:
{¶ 31} "(1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
{¶ 32} "(2) The subject matter of the statement is one of the following:
{¶ 33} "(a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
{¶ 34} "(b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(B) or 706;
{¶ 35} "(c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence."
{¶ 36} The foundational requirements of Evid.R. 613(B) necessary for admission of extrinsic evidence of a prior inconsistent statement are: (1) the former statement is presented to the witness; (2) the witness is asked whether he or she made the statement; (3)the witness is given an opportunity to admit, deny, or explain the statement; and (4) the opposing party is given an opportunity to interrogate the witness on the prior inconsistent statement. State v. Keith (1997),79 Ohio St.3d 514, 525.
{¶ 37} Defendant was acquitted of the second count of domestic violence, which concerned events that transpired on November 10, 2002. Thus, we are not concerned with the victim's prior statements relating to those events. We are concerned only with the victim's written statement to Officer Ponichtera concerning the events of July 9, 2002. That statement, admitted as State's Exhibit 11, concerned the conduct on Defendant's part that gives rise to the first count of domestic violence of which Defendant was convicted.
{¶ 38} During cross-examination of Mrs. Hill, the prosecutor showed her State's Exhibit 11, the written statement she gave to Officer Ponichtera concerning the events of July 9, 2002, and questioned her about that prior statement in an effort to impeach her trial testimony. Mrs. Hill identified the written statement as hers and she admitted that her statement to Officer Ponichtera was inconsistent with her testimony she gave on direct examination.
{¶ 39} Mrs. Hill explained that she was angry with Defendant and emotional because he was having an affair and because she had gotten into a fight with Defendant's mistress who was threatening to file charges against her. Mrs. Hill wanted revenge and she wanted Defendant to get into trouble. On re-direct examination, defense counsel also questioned Mrs. Hill about her prior inconsistent statement to Officer Ponichtera. Over Defendant's objection, the trial court admitted that prior inconsistent written statement.
{¶ 40} Notwithstanding the proper foundation that was laid in this case, extrinsic evidence of a prior inconsistent statement made by a witness is not admissible if the witness admits making the prior inconsistent statement. State v. Theuring (1988),76 Ohio App.3d 152, 155; Blackford v. Kaplan (1939),135 Ohio St. 268. The State concedes in its brief that Mrs. Hill admitted at trial making the written statement to Officer Ponichtera that was inconsistent with her trial testimony. The State argues, however, that the admission of Mrs. Hill's written statement was harmless error as there is no reasonable possibility that it contributed to Defendant's conviction. We agree.
{¶ 41} The content of Mrs. Hill's statement to Officer Ponichtera was elicited from her almost verbatim during cross-examination. In that prior statement Mrs. Hill indicated that Defendant hit her and threw the phone at her, striking her in the head. Whether the jury actually saw the written statement itself after it was admitted in evidence was of little or no consequence, because it had already heard and was aware of its contents. Moreover, Defendant's concern that the jury would utilize Mrs. Hill's prior written statement, which she recanted at trial, as substantive evidence of Defendant's guilt was adequately addressed by the trial court in its instructions to the jury. The court stated:
{¶ 42} "Testimony was introduced about prior inconsistent statements of a witness. Those statements are introduced for the purpose of helping you to test the credibility and believability of that witness's trial testimony. They may be considered only for that purpose. These statements were not received and may not be considered as independent evidence of the criminal acts charged."
{¶ 43} The trial court's admission of Mrs. Hill's written statement to Officer Ponichtera while error, was nevertheless harmless. The third assignment of error is overruled.
 FOURTH ASSIGNMENT OF ERROR
{¶ 44} "The finding of guilt was against the manifest weight of the evidence."
{¶ 45} A weight of the evidence argument challenges the believability of the evidence, and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15562, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
{¶ 46} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
{¶ 47} Defendant was convicted of domestic violence in violation of R.C. 2919.25(A) which provides: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Defendant argues that his conviction is against the manifest weight of the evidence because there were no eyewitnesses to the assault except the victim, and she recanted her prior statements to the police and testified that the injuries she received were not intentionally caused by Defendant but were accidental and/or the product of a fight she had with Defendant's girlfriend.
{¶ 48} The jury could reasonably infer from the direct and circumstantial evidence the State presented that Mrs. Hill's injuries were caused by Defendant. The nurse and physician's assistant that treated Mrs. Hill at the hospital testified that Mrs. Hill told them she had been hit in the head with a cordless telephone and had scratched and hit in the face. Mrs. Hill indicated that the assault occurred shortly before she came to the hospital. Defendant objected, but the court overruled the objection on the basis of the medical diagnosis statement exception to the rule against hearsay. Evid.R. 803(4).
{¶ 49} When Officer Ponichtera was dispatched to the hospital on a report of domestic violence, he observed Mrs. Hill's injuries. They appeared to be fresh, which undermined her later claim that they were inflected in a fight with Defendant's girlfriend the night before.
{¶ 50} Furthermore, the condition of Mrs. Hill's home that Officer Ponichtera observed immediately after talking with Mrs. Hill at the hospital, which included overturned tables, broken lamps and broken pieces of a phone, was consistent with Hill's statement to police that she struggled with Defendant. After being treated and released from the hospital, Mrs. Hill did not return to the home she shared with Defendant but instead went to her aunt's house for several days.
{¶ 51} This case presented a credibility contest, not so much as between witnesses but between Mrs. Hill's different versions of the event: the one she told police versus the one she told at trial. The credibility of the witness and the weight to be given to their testimony are matters for the trier of facts to resolve.State v. DeHass (1967), 10 Ohio St.2d 230.
{¶ 52} On this evidence the jury could reasonably choose to disbelieve Mrs. Hill's trial testimony and the recantation of her prior statement to police. The jury did not lose its way simply because it chose to believe the version of the events Mrs. Hill gave police rather than the version she gave at trial. In reviewing this record as a whole we cannot say that the evidence weighs heavily against a conviction, that the jury lost its way, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
{¶ 53} The fourth assignment of error is overruled. The judgment of the trial court will be affirmed.
Judgment affirmed.
Brogan and Young, JJ., concur.