[Cite as *State v. Jordan*, 2012-Ohio-3793.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-110833 |
| | | TRIAL NO. B-1003262 |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| RUBEN JORDAN, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 24, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Rachel Lipman Curran,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michele L. Barry,* for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**HILDEBRANDT, Presiding Judge.**

{¶1} Defendant-appellant Ruben Jordan appeals the judgment of the Hamilton County Court of Common Pleas convicting him of aggravated murder with a firearm specification and possessing a weapon while under a disability. He was convicted after a jury trial.

### The Murder of Victor Davis

{¶2} In October 2008, Brian Austin was murdered. Victor Davis identified Jordan's son, Kareem Gilbert, as the perpetrator.

{¶3} After he had identified Gilbert as Austin's killer, Davis told the police that he feared for his life because of threats from Gilbert's family. On October 31, 2008, Davis's fears were confirmed, as he was fatally shot outside of his apartment building.

{¶4} Gilbert was indicted for the murders of both Austin and Davis. But in May 2010, Gilbert gave a recorded statement to police and prosecutors in which he implicated Jordan as Davis's assailant. As part of a written plea arrangement, Gilbert agreed to plead guilty to reduced charges for the killing of Austin in exchange for his testimony against Jordan.

{¶5} The case against Jordan proceeded to trial in January 2011. At trial, the state presented the testimony of Dean Shade, a resident of Davis's apartment complex. Shade testified that on the night of Davis's murder, he had heard shots and had looked out of his window. He stated that he had seen a man who matched Jordan's general physical description walking from the scene of the shooting.

{¶6} Kenneth Heard was a drug dealer from whom Jordan had regularly bought crack cocaine. Heard testified that, after the murder of Davis, Jordan had

confessed to him that he had killed Davis and that he had let Gilbert take the blame for the murder.

{¶7} Criminalist Paul Glindmeyer responded to the scene immediately after Davis had been shot, and he noticed a quantity of what appeared to be fresh saliva near Davis's body. Glindmeyer testified it was a custom among some people to mark their "turf" by spitting on the street or sidewalk. He took a sample of the saliva and submitted it for deoxyribonucleic acid (DNA) testing. The testing revealed that the DNA in the saliva matched that of Jordan.

{¶8} Kareem Gilbert took the stand and immediately repudiated his prior statement implicating Jordan. Although he admitted having made the statement, he contended that it had been fabricated and that neither he nor Jordan had been present at the scene of Davis's murder. The trial court admitted the recording of the statement as well as a transcript into evidence with the limiting instruction that the jury was to consider the statement for impeachment purposes only.

{¶9} Jordan offered the testimony of his fiancée, Leshuande Ramsey, who testified that both Jordan and Gilbert had been at home with her the entire night of Davis's murder. Jordan also called one of the detectives who had testified for the state and questioned him about the possibility that Gilbert's brother might have killed Davis.

{¶10} The jury found Jordan guilty, and the trial court sentenced him to life imprisonment with parole eligibility after 25 years for aggravated murder, a consecutive three-year term of imprisonment for the firearm specification, and another consecutive two-year term for possessing a weapon while under a disability. The trial court denied Jordan's motion for a new trial under Crim.R. 33.

**Timeliness of Jordan's Appeal**

{¶11}    Before we discuss Jordan's assignments of error, we address the state's contention regarding this court's jurisdiction to review the conviction.  The state maintains that because Jordan did not file his notice of appeal until more than nine months after the sentence had been journalized, this court has jurisdiction to review only the trial court's denial of Jordan's motion for a new trial.

{¶12}    We find no merit in the state's argument.  Jordan's motion for a new trial stayed the time for appealing the conviction until 30 days after the trial court's ruling on the motion.  App.R. 4.  *See also State v. Klein,* 1st Dist. No. C-970788, 1998 Ohio App. LEXIS 5757 (Dec. 4, 1998).  Thus, Jordan's notice of appeal was timely, and this court has jurisdiction to review the conviction.

**Admissibility of Kareem Gilbert's Statement**

{¶13}    In his first assignment of error, Jordan argues that the trial court erred in admitting extrinsic evidence of Kareem Gilbert's prior statement implicating Jordan in the murder of Davis.  But because Jordan did not object to the admission of the statement, we review the record for plain error.  Under the plain-error standard, we must affirm the conviction unless, but for the allegedly inadmissible evidence, the outcome of the trial would have been different.  *See State v. Lukacs,* 188 Ohio App.3d 597, 2010-Ohio-2364, 936 N.E.2d 506, ¶ 34 (1st Dist.).

{¶14}    Evid.R. 613 provides for the admissibility of a witness's prior inconsistent statement for the purpose of impeaching the witness's credibility.  *See State v. Carusone,* 1st Dist. No. C-010681, 2003-Ohio-1018.  But extrinsic evidence of the prior statement is admissible only "[w]hen a witness denies making a prior statement, or states that he is unable to recall the prior statement."  *Id.* at ¶ 37, citing *State v. Davenport,* 1st Dist. No. C-980516, 1999 Ohio App. LEXIS 3469 (July 30,

1999); *see also State v. Johnson,* 10 Ohio App.3d 14, 17, 460 N.E.2d 625 (10th Dist.1983).

{¶15} Thus, because Gilbert admitted having made the prior statement, extrinsic evidence of the statement was not admissible. Nonetheless, the trial court did not commit plain error. In light of the limiting instruction, we must presume that the jury did not consider the prior statement as substantive evidence. And because of the other evidence adduced by the state—including eyewitness testimony, the statement of Jordan, and forensic evidence gathered at the crime scene—we cannot say that the outcome of the trial would have been different absent the error. Moreover, as Jordan himself concedes, the state could have properly engaged in a line-by-line cross-examination of Gilbert with respect to the prior statement, and the jury would have had been provided the identical evidence. *See State v. Hill*, 2d Dist. No. 20028, 2004-Ohio-2048, ¶ 41. Under these circumstances, Jordan was not deprived of a fair trial, and we overrule the first assignment of error.

### Prosecutorial Misconduct

{¶16} In his second, third, and fourth assignments of error, Jordan claims that he was deprived of a fair trial because of prosecutorial misconduct. We address these assignments together.

{¶17} The test for prosecutorial misconduct is whether the prosecutor's questions or remarks were improper, and, if so, whether they prejudicially affected the defendant's substantial rights. *State v. Glenn,* 1st Dist. No. C-090205, 2011-Ohio-829, ¶ 52, citing *State v. Smith*, 14 Ohio St.3d 13, 14-15, 470 N.E.2d 883 (1984) and *State v. Canyon,* 1st Dist. Nos. C-070729, C-070730, and C-070731, 2009-Ohio-1263, ¶ 17.

{¶18} Jordan first argues that the assistant prosecutor improperly invited the jury to consider Gilbert's prior statement as substantive evidence rather than mere impeachment.

{¶19} We agree that a number of the assistant prosecutor's statements tended to suggest that the jury could consider the prior statement for its truth. Nonetheless, we must presume that the jury followed the trial court's instruction that the prior statement was to be considered only for purposes of impeachment. *See State v. Loza,* 71 Ohio St.3d 61, 79, 641 N.E.2d 1082 (1994). Thus, we find no prejudice to have resulted from the asserted misconduct.

{¶20} Jordan next argues that the assistant prosecutor improperly vouched for the credibility of Gilbert's out-of-court statement when he emphasized his own role in eliciting the statement. In this regard, the assistant prosecutor stated the following;

> I'm not trying to toot my own horn, but you got Detective McGuffey and Luke and Vaughn and they're all homicide investigators. And Ms. Shanahan and myself all part of a plea agreement, as you can see that it says that. The statement has to be truthful. And as Detective Ballman told you, a lot of people want to cooperate with us in investigations, and we have to make an independent determination of whether what they are saying is true, because we have got a duty, we are officers of the court, we are here to see that justice is done.

The prosecutor also emphasized that his and the other interrogators' techniques were calculated to reveal the truth, and he noted that the plea agreement included his signature.

{¶21} A prosecutor may elicit testimony that a witness has agreed to tell the truth as part of a plea agreement. *State v. Jackson,* 92 Ohio St.3d 436, 448, 751

N.E.2d 946 (2001). But he may not express his belief or opinion regarding the credibility of a witness. *Id.*

{¶22}     In this case, the assistant prosecutor went beyond merely eliciting testimony that Gilbert had agreed to tell the truth. He vouched for the truth of the prior statement and went so far as to take personal credit for its trustworthiness. Such comments went beyond the limits of proper argument. Still, because of the trial court's admonitions about the prior statement, we cannot say that the comments deprived Jordan of a fair trial.

{¶23}     Finally, Jordan argues that the state engaged in misconduct by referring to matters not in evidence. Specifically, he argues that the assistant prosecutor improperly alleged that he and Gilbert had formulated a plot to ensure that they would both be acquitted of Davis's murder. In closing argument, the prosecutor made the following remarks:

> Don't think this was something that had not been thought through. The whole thing is that they [Jordan and Gilbert] knew there was going to be a jury somewhere down the road, and this is his clear final test, his final obstacle is you folks, and we are asking that you not let him get past justice by a jury trial in this particular case, because when he is found not guilty, I don't know whether you have heard, it's a term called double jeopardy. And at a later point, if Kareem Gilbert is charged with Davis's homicide, there is nothing to prevent Ruben Jordan from coming in here, another jury months and months from now and saying, yes, I did do it. Now that would be pretty monumental, and I don't know if anybody would believe him, but double jeopardy prevents him from being tried twice for the same crime. So again, this is the kind of plan that you don't know where it's

7

going to go, but it's certainly foreseen that type of thing could happen depending on how this thing goes with you folks.

{¶24} Once again, we find these comments to be inappropriate. A prosecutor may not express his personal beliefs or opinions regarding the guilt of the accused and may not refer to matters not supported by admissible evidence. *State v. Lott,* 51 Ohio St.3d 160, 166, 555 N.E.2d 293 (1990), citing *Smith,* 14 Ohio St.3d at 14, 470 N.E.2d 883. Here, the state asked the jury to convict Jordan not on the basis of the evidence, but to prevent Jordan and Gilbert from playing what the prosecutor referred to as a "grade-school simplistic trick." Such collusion on the part of Jordan and Gilbert was not demonstrated by the record, and the comments therefore went beyond the limits of proper argument.

{¶25} Nonetheless, Jordan did not object to these comments about collusion and therefore must demonstrate that, but for the misconduct, the outcome of the trial would have been different. *State v. Rucker*, 1st Dist. No. C-110082, 2012-Ohio-185, ¶ 20, citing *State v. Williams,* 79 Ohio St.3d 1, 12, 679 N.E.2d 646 (1997). In this instance, Jordan has not met his burden. As we have already commented, there was ample evidence to support the conviction, and we cannot say that the comments deprived Jordan of a fair trial. But we strongly caution the state that, in a closer case than the one before us now, such comments could very well result in reversal. But on the basis of the record before us, we overrule the second, third, and fourth assignments of error.

{¶26} In his fifth assignment of error, Jordan contends that the trial court erred in failing to provide the jury with a proper limiting instruction concerning Gilbert's out-of-court statement. Specifically, he argues that the court failed to adequately inform the jury that it could consider the statement for impeachment purposes only and not as substantive evidence. Once again, Jordan

did not object to the jury instructions, and we therefore review the matter under the plain-error standard. Crim.R. 30(A); *State v. Coley,* 93 Ohio St.3d 253, 266, 754 N.E.2d 1129 (2001).

{¶27} We find no plain error. The trial court informed the jury that the "statement was admitted for the sole purpose of impeaching the witness. The statement is not testimony and may only be used to evaluate the credibility of the witness." This instruction was accurate and fully explained the import of the prior statement. Although Jordan contends that the instruction was deficient, he essentially reiterates his argument that extrinsic evidence of the statement was simply inadmissible. Having already addressed that argument, we need not do so again. The fifth assignment of error is overruled.

{¶28} Although not separately assigned as error, Jordan makes the alternative arguments that he was deprived of the effective assistance of trial counsel and that the trial court erred in overruling his motion for a new trial. We choose to recast these arguments as the sixth and seventh assignments of error, respectively.

{¶29} To establish ineffective assistance of counsel, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable performance and that prejudice arose from counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley,* 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus.

{¶30} As we have already noted, trial counsel failed to lodge a number of objections that were warranted. As a result, the jury was presented with an inadmissible out-of-court statement as well as a number of inappropriate comments on the part of the assistant prosecutor. But counsel's lapses did not deprive Jordan of a fair trial, and we accordingly overrule the sixth assignment of error.

**{¶31}**     As for the seventh assignment of error, we review the denial of a motion for a new trial under an abuse-of-discretion standard.  *State v. Davis,* 1st Dist. No. C-090220, 2010-Ohio-5125, ¶ 41, citing *State v. Schiebel,* 55 Ohio St.3d 71, 564 N.E.2d 54 (1990).  A new trial cannot be granted on the basis of irregularities that do not affect the substantial rights of the defendant.  *Glenn,* 2011-Ohio 829, at ¶ 88.

**{¶32}**     We find no abuse of discretion in the trial court's denial of the motion.  Although there were irregularities in the proceedings, they did not affect Jordan's substantial rights.  The evidence produced by the state was such that the asserted errors cannot be said to have affected the outcome of the proceedings.  Accordingly, we overrule the seventh assignment of error.

### Conclusion

**{¶33}**     The judgment of the trial court is affirmed.

Judgment affirmed.

**HENDON** and **FISCHER, JJ.,** concur.

Please note:
The court has recorded its own entry this date.

10